WOLFF & SAMSON PC
140 BROADWAY, 46TH FLOOR
NEW YORK, NEW YORK 10005
TEL: (212) 973-0572
FAX: (212) 530-2207
Karen L. Gilman, Esq. (KG-5161)
*Attorneys for Greenwich Insurance Company*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | : |
| | : |
| METRO AFFILIATES, INC., et al., | : Case No.: 02-42560 (PCB) |
| | : |
| Debtors. | : Jointly Administered |
| ------------------------------------------------- | : |
| GREENWICH INSURANCE COMPANY, | : |
| | : |
| Plaintiff, | : Adv. Proc. No.: 03-06364 (PCB) |
| | : |
| vs. | : |
| | : |
| GREENWICH STREET CAPITAL | : |
| PARTNERS II, L.P., | : |
| | : |
| Defendant. | : |
| | : |

### AMENDED NOTICE OF APPEAL

Greenwich Insurance Company ("Greenwich"), by its undersigned counsel, Wolff & Samson PC, hereby appeals, under 28 U.S.C. § 158(a) and Rules 8001(a) and 8002(a) of the Federal Rules of Bankruptcy Procedures, from a Final Order under 11 U.S.C. § 365(c)(2) and Fed. R. Bankr. P. 7056 Granting Summary Judgment to Greenwich Street Capital Partners II, L.P., denying summary judgment to Greenwich, and dismissing Adversary Proceeding No. 03-06364 (PCB) with prejudice, by Order dated March 12, 2008, and entered on the docket as Document No. 17 (the "Order"). (A copy of the Order is appended hereto as Exhibit "A". A copy of the Bankruptcy Court's Memorandum Decision, dated March 6, 2008 (Document No. 15), referenced in the Order, is appended hereto as Exhibit "B").

1123481.1

The names of the parties to the Order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

**APPELLANT**
Greenwich Insurance Company

**COUNSEL:**
KAREN L. GILMAN
Wolff & Samson PC
140 Broadway, 46th Floor
New York, NY 10005
Tel: (212) 973-0572
Fax : (212) 858-7524
-and-
KAREN L. GILMAN
Wolff & Samson PC
One Boland Drive
West Orange, NJ 07052
Tel: (973) 325-1500
Fax : (973) 530-2206
Email: kgilman@wolffsamson.com

**APPELLEE**
Greenwich Street Capital Partners II, L.P.

**COUNSEL:**
CHARLES I. PORET
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 698-3532
Fax : (212) 698-3599
Email: charles.poret@dechert.com

JOEL H. LEVITIN
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 698-3500
Fax : (212) 698-3599
Email: joel.levitin@dechert.com

Dated: New York, New York
      April 4, 2008

WOLFF & SAMSON PC
*Attorneys for Greenwich Insurance Company*

By: _____ /s/ Karen L. Gilman _____
      KAREN L. GILMAN (KG-5161)

**EXHIBIT A**

DECHERT LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Charles I. Poret (CP-1538)

*Attorneys for Greenwich Street Capital Partners II, L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

In re:

METRO AFFILIATES, INC., et. al.,

                Debtors.

------------------------------------------------------------- X

GREENWICH INSURANCE COMPANY,

                Plaintiff,

    -against-

GREENWICH STREET CAPITAL
PARTNERS II, L.P.,

                Defendant.

------------------------------------------------------------- X

Chapter 11

Case No.: 02-42560 (PCB)

Jointly Administered

Adv. Proc. No.: 03-06364 (PCB)

### ORDER (I) GRANTING GREENWICH STREET CAPITAL PARTNERS II, L.P.'S MOTION FOR SUMMARY JUDGMENT; (II) DENYING GREENWICH INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND (III) DISMISSING ADVERSARY PROCEEDING WITH PREJUDICE

Upon consideration of the (i) motion of Greenwich Street Capital Partners II, L.P.

("GSCP") for an order granting summary judgment pursuant to section 365(c)(2) of the

Bankruptcy Code, and (ii) the cross-motion of Greenwich Insurance Company ("Greenwich") for

entry of an order granting it summary judgment against GSCP; and the Court having considered

the papers filed in support and in opposition to the relief sought by GSCP and Greenwich, and

having heard the arguments of counsel on the record at the hearing on the motions; and good and sufficient cause appearing for the entry of this Order;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that

1.    Greenwich Street Capital Partner II, L.P.'s motion for the entry an order granting it summary judgment pursuant to section 365(c)(2) of the Bankruptcy Code is granted in its entirety for the reasons set forth by this Court in its Memorandum Decision dated March 6, 2008;

2.    Greenwich Insurance Company's cross-motion for the entry of an order granting it summary judgment against GSCP is denied in its entirety for the reasons set forth by this Court in its Memorandum Decision dated March 6, 2008; and

3.    The above-captioned adversary proceeding is dismissed with prejudice.

Dated: New York, New York
       March 12, 2008

                              /s/ Prudence Carter Beatty
                              United States Bankruptcy Judge

2

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re
METRO AFFILIATES, INC., et al.,                    Case No. 02-42560 (PCB)

Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GREENWICH INSURANCE COMPANY,

Plaintiff,                                         Adversary No. 03-6364
 vs.

GREENWICH STREET CAPITAL
PARTNERS II, L.P.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:

Wolff & Samson, PC
Attorneys for Plaintiff Greenwich Insurance Company
140 Broadway, Forty-Sixth Floor
New York, New York 10005
By:    Karen L. Gilman, Esq.
       Kenneth N. Laptook, Esq.

Dechert LLP
Attorneys for Defendant Greenwich Street Capital Partners II, L.P.
30 Rockefeller
New York, New York 10112
By:    Charles I. Poret, Esq.

With copy to:
Stroock & Stroock & Lavan LLP
Attorneys for the Debtor
180 Maiden Lane
New York, New York 10038-4982
By:    Lewis Kruger, Esq.

- 1 -

<u>MEMORANDUM DECISION</u>

BEATTY, Prudence Carter, U.S.B.J.

Greenwich Street Capital Partners II, L.P. ("GSCP"), the defendant in this adversary

proceeding, has moved for summary judgment. The plaintiff, Greenwich Insurance

Company ("Greenwich"), has cross-moved for summary judgment in its favor. Based on the

findings of fact and conclusions of law which follow, the court grants the motion of GSCP

and denies the motion of Greenwich.

<u>Statement of Facts</u>

1. On August 16, 2002, Atlantic Express Transportation Group, Inc. ("Atlantic

Express") and a number of its affiliates and subsidiaries filed petitions under chapter 11.

(Compl., ¶ 3,4).[1]

2. GSCP is a private equity investment fund. (Poret Aff., Ex. A, Patel Tr. 10:24-25).

At the time of the events giving rise to this dispute, GSCP was the majority shareholder of

Atlantic Express. (Poret Aff., Ex. A, Patel Tr. 21:25-22:5, 42:21-22; Ex. B, Schlenker July

Tr. 21:20-22:6).

3. GSCP's investment in Atlantic Express prior to filing was in excess of $100

million dollars and rising. (Laptook Aff., Ex. P, Patel Tr. 36-37,42). Even after confirmation

GSCP remained a significant shareholder in Atlantic Express. (Laptook Aff., Ex. P, Patel Tr.

42:15-22).

4. Atlantic Express is the fourth largest provider of school bus transportation and

---

[1] The Statement of Facts is largely drawn from the Statement of Undisputed Facts submitted by the parties.
Exhibit references are to the exhibits to the affidavit of Charles I. Poret, sworn to on September 15, 2004, and
Kenneth N. Laptook, sworn to on September 29, 2004.

para transit services to various municipalities throughout the United States. (Poret Aff., Ex. B, Schlenker July Tr. 28:13-29:18).

5. In early 2001, over a year before the chapter 11 filings, Atlantic Express contacted Greenwich seeking a $6.2 million insurance premium finance surety bond. (Laptook Aff., Ex. R, Moran Tr. 6:14-8:12; Ex. S, Wiss Tr. 15:8-15).

6. Without the bond, Cananwill, Inc. ("Cananwill"), a provider of insurance premium financing, was unwilling to enter into an insurance premium financing agreement with Atlantic Express. (Laptook Aff., Ex. Q, Schlenker Tr. 96:6-11).

7. Greenwich ultimately issued that bond and, in connection with the transaction, Atlantic Express executed a Commercial Surety and Indemnity Agreement, dated January 5, 2001 (the "Indemnity Agreement"). (Laptook Aff., Ex. A; Ex. S, Wiss Tr. 16:20-17:19, Ex. Q, Schlenker Tr. 90:10-91:7).

8. In or around June of 2001, Atlantic Express, through its brokers, sought to obtain liability insurance covering part of its fleet of buses through Liberty Mutual Insurance Company ("Liberty"). (Poret Aff., Ex. B, Schlenker July Tr. 101:14-102:15). (Laptook Aff., Ex. P, Patel Tr. 36-37,42).

9. Because Atlantic Express was unable to satisfy Liberty's requirement that the entire $11,038,137 premium be paid up front, Atlantic Express sought to finance that premium through Cananwill. (Poret Aff., Ex. B, Schlenker July Tr. 71:11-23, 100:16-20, 101:14-17, 102:10-20, Ex. C).

10. Cananwill, in turn, required that Atlantic Express secure its obligation to Cananwill under the proposed Commercial Insurance Premium Finance Agreement by obtaining surety bonds that would pay Cananwill in the event Atlantic Express defaulted on

its obligations under the premium financing agreement. (Poret Aff., Ex. B, Schlenker July Tr. 71:25-72:5, 96:6-11; Ex. D, Moran Tr. 12:5-9; Ex. E, Wiss Tr. 20:21-21:4).

11.  Greenwich was again asked to provide Cananwill with such surety bonds, this time in the amount of $10.5 million. (Poret Aff., Ex. B, Schlenker July Tr. 95:10-96:4, 96:6-11, 97:18-24; Ex. D, Moran Tr. 12:5-9, 14:22-15:5).

12.  At the time of this request in June 2001, Greenwich was concerned that Atlantic Express' financial condition had deteriorated. (Poret Aff. Ex. D, Moran Tr. 13:19-14:16).

13.  As a result, Greenwich was unwilling to rely solely upon the existing Indemnity Agreement that had been executed by Atlantic Express in January, and demanded additional security in the form of collateral or a third-party indemnity before it would issue additional security bonds. (Laptook Aff., Ex. R, Moran Tr. 14:22-15:10; Ex. S, Wiss Tr. 20:21-21:19).

14.  Atlantic Express responded that it was unable to provide collateral but that it would discuss the matter of additional security with its owners. (Laptook Aff., Ex. R, Moran Tr. 15:14-19).

15.  In or about late June of 2001, Kieran Moran, an underwriter employed by Greenwich, participated in a conference call with Nat Schlenker, Chief Financial Officer of Atlantic Express, Bradley Kane of GSCP and representatives of Atlantic Express' insurance brokers. (Laptook Aff., Ex. R, Moran Tr. 15:20-16:10).

16.  Kane was an "associate" employed by GSCP and was the liaison between it and Atlantic Express (Laptook Aff., Ex. Q, Schlenker Tr. 147:10-16) and the person at GSCP responsible for the Atlantic Express investment. (Laptook Aff., Ex. R, Moran Tr. 122:19-24). He also had the authority, on behalf of GSCP, to approve the terms of the various agreements negotiated between Atlantic Express and GSCP. (Laptook Aff., Ex. T, Jewell Tr.

- 4 -

97:21-98:3).

17. Greenwich wanted GSCP, who was Atlantic Express' majority shareholder, to indemnify or guarantee Atlantic Express' obligations to Greenwich under the proposed bonds. (Poret Aff., Ex. D, Moran Tr. 14:5-15:10, 18:2-12; Ex. E., Wiss Tr. 21:6-19; Ex. F, Schlenker September Tr. 11:6-12, 18:9-12).

18. Greenwich was told that GSCP would not agree to indemnify Greenwich if Atlantic Express defaulted in its obligations to Cananwill and Greenwich had to pay out on the proposed surety bonds. (Poret Aff., Ex. D, Moran Tr. 19:23-19:24; Ex. E, Wiss Tr. 23:20-24, 31:2-4).

19. GSCP also informed Greenwich that it would not agree to guarantee Atlantic Express' obligations to Greenwich and would not agree to make Greenwich a third party beneficiary of any agreement between GSCP and Atlantic Express pursuant to which GSCP would provide Atlantic Express with a financing commitment with respect to Atlantic Express' proposed obligations to Cananwill and/or Greenwich. (Poret Aff., Ex. E, Wiss Tr. 40:13-19, 44:6-13; Ex. G; Ex. H; Ex. I; Ex. J; Ex. K, Jewell Tr. 23:15-19 (p.20). 37; 5-20 (p.31), 38:19-22 (p.32), 41:1-12 (p.34-35), 52:23-53.5 (p.44), 82:18-83:3 (p.69-70)).

20. After negotiations, the following letters were delivered between GSCP and Atlantic Express, and Atlantic Express and Greenwich:

a. A letter dated July 19, 2001 from GSCP to Atlantic Express (the "July 19th Letter"), stating:

> This letter shall confirm that [GSCP] will make available to you funds, in an aggregate amount not to exceed $10 million, from time to time until such time that all obligations to Greenwich Insurance Company under, or in respect of, the Cananwill Commercial Insurance Premium Finance Agreement (Quote #GLW062001008A) are met in their entirety. Such funds may be used by you solely to satisfy your direct

or indirect payment obligations to Cananwill, Inc. under, in respect of, the Cananwill Commercial Insurance Premium Finance Agreement (Quote # GLW062001008A) and to Greenwich Insurance Company under, or in respect of, the bond dated July 20, 2001 issued by Greenwich Insurance Company to Cananwill, Inc.
(Poret Aff., Ex. O); and

    b.  A letter dated July 20, 2001 from Atlantic Express to Greenwich (the "July 20th Letter"), stating:

> Attached is a copy of a commitment letter which [Atlantic Express] has received from [GSCP]. The commitment letter constitutes a commitment by [GSCP] to provide funding in the aggregate amount of $10,000,000, if requested by [Atlantic Express], to enable [Atlantic Express] to satisfy [Atlantic Express'] direct or indirect payment obligations to Greenwich Insurance Company under, or in respect of, the bond dated July 20, 2001 issued by Greenwich Insurance Company to Cananwill, Inc. In the event that draws are necessary under the commitment letter as aforesaid , and if [Atlantic Express] fails to make a request for funding under the commitment letter upon demand by Greenwich Insurance Company, or if [GSCP] shall fail to honor a request by [Atlantic Express] for funding under the commitment letter, then Greenwich Insurance Company shall be entitled to specific performance against [Atlantic Express] of the obligations of [Atlantic Express] under this letter or to cause [Atlantic Express] to enforce [Atlantic Express'] rights under the commitment letter.
> (Poret Aff., Ex. P).[2]

21.  As of the date of the foregoing letters no bond had yet been issued. Ultimately, Greenwich issued two bonds dated August 8, 2001 rather than one dated July 20, 2001 to secure Atlantic Express's payment obligations to Cananwill under the Premium Finance Agreement. (Laptook Aff., Ex. S, Wiss Tr. 53:22-55:25).

22.  Expressly and in reliance upon the July 19th Letter, the July 20th Letter, and the Indemnity Agreement, executed and issued, as co-sureties, on behalf of Atlantic Express, as

---

[2] There is also an agreement dated July 20, 2001 between Atlantic Express and GSCP (the "Agreement") which specifies the terms and conditions on which GSCP will provide funding and details Atlantic Express' repayment obligations, including those for interest. Greenwich has denied having any knowledge of the Agreement prior to this litigation although it has not questioned the authenticity of the Agreement.

principal, to Cananwill, as obligee, Premium Finance Bond No. 45033905 in the penal sum of $5,000,000 (collectively, the "Bonds") (Laptook Aff., Exs. E and F), and secured Atlantic Express' financial obligations to Cananwill under the Premium Finance Agreement.

23. About eleven months later and on or about July 10, 2002, Atlantic Express defaulted on its last payment obligation to Cananwill under the Commercial Insurance Premium Finance Agreement between them. (Poret Aff., Ex. H, Schlenker September Tr. 60:22-25, 61:15-17; Ex. Q).

24. On July 15, 2002, Cananwill issued a Notice of Intent to Cancel Insurance (Laptook Aff., Ex. H) and on August 2, 2002, it issued a Notice of Cancellation. (Laptook Aff., Ex. I).

25. Neither Cananwill nor Atlantic Express notified GSCP of such default or notice of Cancellation. (Poret Aff., Ex. F, Schlenker Tr. 69:19-70:2, 79:7-8, Ex. A, Patel Tr. 69:12-13).

26. Atlantic Express did not inform Greenwich that it was unable to pay Cananwill, that it had defaulted on its obligations under the Premium Finance Agreement, or that Cananwill had cancelled that agreement. (Laptook Aff., Ex. Q, Schlenker Tr. 201:5-202:6).

27. Greenwich had not required Canawill to provide it with notice of any default by Atlantic Express in its payment to Cananwill. (Poret Aff., Ex. L; Ex. M; Ex. E, Wiss Tr. 16:15-19).

28. Greenwich did not receive notice from Cananwill of Atlantic Express' default until after the bankruptcy filing by Atlantic Express. (Poret Aff., Ex. S).

29. Greenwich first learned of Atlantic Express' default when it received a demand letter from Cananwill on August 19, 2002 (Laptook Aff., Ex. S, Wiss Tr. 78:2-16; Ex. J).

30. On September 5, 2002, Ronald E. Wiss ("Wiss"), on behalf of Greenwich, wrote to Nathan Schlenker at Atlantic Express advising him of Cananwill's claim, inquiring about available defenses and reminding him of their conversation the previous day in which Wiss insisted that Atlantic Express make a demand on GSCP for funds pursuant to the July 19th Letter. (Laptook Aff., Ex. S, Wiss Tr. 86:7-87:131 Ex. K).

31. By letter dated October 24, 2002, Schlenker informed Wiss that Atlantic Express knew of no defenses to Cananwill's claim against the Bonds. (Laptook Aff., Ex. M).

32. On the following day, Wiss wrote to GSCP, advising it of Cananwill's claim and demanding payment of the $1,082,410.48 then owed to Cananwill. (Laptook Aff., Ex. S, Wiss Tr. 88:6-87:17; Ex. N). In that letter, Wiss reminded GSCP of its obligations under the July 19th Letter and stated that Greenwich had been advised by Schlenker that GSCP had refused his request for funds to satisfy Atlantic Express' obligations to Cananwill and Greenwich (Laptook Aff., Ex. N). Schlenker testified that he never made a demand for the funds upon GSCP. (Schlenker Tr. 202:18-203:20, 209:13-20, 211:14-21, 224:9-19).[3]

33. In early November 2002, Greenwich paid Cananwill the sum of $1,082,410.48, the amount owed by Atlantic Express under the Premium Finance Agreement, and received a Release and Assignment of Claim in return. (Laptook Aff., Ex. S, Wiss Tr. 82-18-83:2; Ex. O).

## DISCUSSION

### Summary Judgment

---

[3] This court concludes that whether or not Schlenker made demand for funds on GSCP is not a material fact because of its conclusion, infra, that GSCP could not be required to make a loan to Atlantic Express post-

- 8 -

GSCP has moved for summary judgment in its favor and Greenwich has cross-moved for summary judgment in its favor. Bankruptcy Rule 7056 makes Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") applicable in adversary proceedings. Rule 56 (c) provides that summary judgment "shall be rendered forthwith if the pleadings * * * together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences. In re CIS, 214 B.R. 108, 118 (Bankr. S.D.N.Y. 1997). When ruling on a motion for summary judgment, the court is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994). The court can consider the content of all submitted affidavits in determining whether a proponent's affidavit is sufficient to give rise to a dispute as to material issue of fact. See Rule 56(e); In re CIS, 214 B.R. at 118.

The nonmoving party is required to put forth all of its evidence or risk the grant of the motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9 (2d Cir. 1983); In re Ross, 64 B.R. 829, 836 (Bankr. S.D.N.Y. 1986). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with affidavits, depositions, or other sworn evidence setting forth specific facts showing that there exists a genuine issue of material fact. Rule, 85 F.3d at 1011; accord Rule 56(e). However, the nonmoving party must do more than simply show that there is some

---

petition.

metaphysical doubt as to the material facts. <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

<u>Corp.</u>, 475 U.S. 574, 578-88 (1986). Instead, the non-movant must "come forward with

enough evidence to support a jury verdict in its favor, and the motion will not be defeated

merely *** on the basis of conjecture or surmise." <u>Trans Sport v. Starter Sportswear</u>, 964

F.2d 186, 188 (2d Cir. 1992) (citation omitted).

 The court must also be mindful that the underlying facts are required to be ones that

would be admissible in evidence at trial and shown through an affidavit by one competent to

testify. Rule 56(e). Put yet another way, the disputed facts must be material before the court

need concern itself with drawing inferences favorably to the non-movant as well as

admissible at trial. It is perfectly appropriate for the court to make evidentiary rulings on a

motion for summary judgment. See <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136 (1997).

 A brief discussion should be had of the position faced by a court when cross-motions

for summary judgment are made. The court is not required to grant either motion. See

<u>Heublein, Inc. v. U.S.</u>, 996 F.2d 1455, 1461 (2d Cir. 1993); <u>Schwabenbauer v. Bd. of Educ.</u>

<u>of the City of Olean</u>, 667 F. 2d 305, 313-14 (2d Cir. 1982). The court must take care to

consider each motion separately with respect to analyzing whether any material facts are in

issue. One movant's position may depend on a factual finding as to which a material issue of

fact exists. There may not be material facts in dispute on the cross-motion. However, the

court cannot assume no material facts are in dispute merely because cross-motions for

summary judgment have been made.

 Only if both sides are proceeding on the same legal theory is it relatively likely that

the material facts will not shift as the court shifts between the two motions. When the

movants are relying on different arguments, it is much more likely that the court will have to

carefully step through the facts to determine that material facts are not in dispute. The court needs to ensure that the non-moving party on each theory gets the benefit of having the inferences to be drawn from the underlying facts viewed in the light most favorable to it as the party opposing the motion. See Cosmetics Plus Group, Ltd. et al. v. American Int'l Ins. Group et al ( In re Cosmetics Plus Group, Ltd.), 2007 WL 3197417 (Bankr. S.D.N.Y. 2007); Goldberg as Trustee et al. v. South East Partners Corp. et al. (In re Sturman et al.) (Bankr. S.D.N.Y. 1998). In this case the court concludes that the matter may be disposed of by way of summary judgment since there are no disputed issues of fact that are material in light of the court's views on the issues of law.

Executory Contracts and Code §365

Bankruptcy Code ("Code") §365(c)(2)[4] has the effect of prohibiting the assumption or assignment of an executory contract if it is "a contract to make a loan or extend other debt financing or financing accommodations, to or for the benefit of the debtor***." See also Code §365(e)(2)(B). The terms executory contract, loan, debt financing and financing accommodations are not defined in Code §365 or elsewhere in the Code.

GSCP argues that under Code §365 Greenwich cannot recover from it under the July 19th or July 20th Letters because they constitute an executory contract to provide a loan or financial accommodations to Atlantic Express. Greenwich argues that no performance of any obligation remained on the petition date and thus nothing was executory. In this regard, Greenwich argues that Atlantic Express had already defaulted on the payment of the insurance premium pre-petition and was already entitled to make a request to GSCP prior to the filing date for funds to cover the defaulted payment, even though no request had been made.

- 11 -

It is clear that Code §365(c)(2) is intended to prevent a debtor in possession from assuming or assigning contracts that would require loans or financial accommodations to be made in the future, i.e., post-filing date. The definition of the term "executory contract" as used in Code §365(c)(2) must be interpreted with a view to the expressed intent of that subsection. Both the House and Senate Reports that deal with this subsection make clear that the purpose of this subsection was to prevent the trustee, here the debtor in possession, from requiring new advances of money under a pre-petition contract. House Report No. 95-595, 95th Cong., 1st Sess. 348 (1977); See Senate Report No. 95-989, 95th Cong., 2d Sess. 59 (1978). In furtherance of this purpose any pre-petition agreement for a loan or financial accommodations that is unperformed on the petition date must per se be executory. Any other interpretation of Code §365(c)(2) would be inconsistent with the purpose of the subsection that is to prevent lenders from being required to make involuntary post-petition loans[5].

Because the July 19th Letter was one to make a loan or financial accommodation that had not been performed as of the petition date the contract is an executory contract that may not be assumed. While Greenwich has argued for application of the two-party theory of executory contracts, the so-called Countryman test, this definition of executory contract is irrelevant in light of the purpose and plain meaning of Code §365(c)(2). The proper definition of executory contract in other contexts is simply irrelevant.

A loan agreement or one for financing accommodations can of course be partially executed and partially executory on the petition date. If that is the case, then the pre-petition loans or financial accommodations would have already been made and the agreement would

---

[4] All references to the Code are the Code in effect prior to the changes that became effective in October 2005.
[5] Whether or not one agrees that this subsection was a wise exercise of legislative discretion is entirely

provide for the making of additional loans or financial accommodations not yet funded. However, a debtor is barred by Code §365(c)(2) from assuming the agreement in order to obtain the balance of any un-funded obligations. The debtor in possession would have to look to other provisions of the Code for authority to borrow and repay money on secured or unsecured terms. See Code §§ 363 and 364.

Greenwich argues that Atlantic Express' obligation to make a request of GSCP pre-petition was too insignificant to render the contract executory or, alternatively that equity requires that the request be deemed to have been made pre-petition. Unfortunately for Greenwich, even if the request had been made pre-petition but GSCP had not yet performed, Atlantic Express would have been unable to force GSCP to provide funds post-petition[6].

As set forth in the findings of fact, Greenwich sought, but was unable to obtain, a direct guarantee from GSCP of Atlantic Express' obligation. The July 19th and July 20th Letters were the best assurance it could get. Unfortunately the provisions allowing Greenwich to seek specific performance of Atlantic Express's rights failed because Atlantic Express itself could not seek specific performance once bankruptcy intervened. Since Greenwich's rights are wholly derivative of Atlantic Express' rights, Greenwich is barred by Code §365(c)(2) from enforcing any obligation that GSCP had to provide funds to Atlantic Express. Greenwich has no independent rights against GSCP.

The negotiations that pre-dated the July 19th and July 20th Letters made clear that Greenwich was seeking to have GSCP make a financial accommodation for the benefit of Atlantic Express. In particular it sought, but was unable to obtain, GSCP's guarantee. That

---

irrelevant.
[6] Moreover, Greenwich ignores the fact that Atlantic Express' major obligation to GSCP was the implicit obligation in the July 19th and July 20th Letters to repay the monies advanced, an obligation made explicit in the Agreement. While for the purpose of considering GSCP's motion the court must assume that Greenwich did not

- 13 -

financial accommodation ultimately took the form of the July 19th and July 20th Letters.
The provisions of Code §365(c)(2) precludes Greenwich from recovering from GSCP by
trying to step into Atlantic Express' shoes.

### Alternative Theories

Greenwich argues two alternative theories for recovery:  unjust enrichment and
detrimental reliance.  As discussed below, neither theory provides a basis for recovery by
Greenwich.

### Unjust Enrichment

Unjust enrichment is a quasi-contractual theory applying when no other remedy is
available and a person has received a benefit at the expense of another.  Unjust enrichment
applies only where no express agreement exists.  Adiel v. Coca-Cola Bottling Co. of N.Y.,
Inc., 1995 U.S. Dist. LEXIS 13141, *7 (S.D.N.Y. 1995) (citing Clark-Fitzpatrick, Inc. v.
Long Isl. R.R. Co., 70 N.Y.2d 382 (N.Y. 1987)).  Under the theory of unjust enrichment, "a
plaintiff must prove that the defendant was enriched, that such enrichment was at plaintiff's
expense, and that the circumstances were such that in equity and good conscience the
defendant should return the money or property to the plaintiff."  Dolmetta v. Unitah Nat'l
Corp., 712 F.2d 15, 20 (2d Cir. 1983); see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,
373 F.3d 296 (2d Cir. 2004).  The fact that defendant received a benefit from plaintiff's
endeavors, alone, is not sufficient to establish unjust enrichment.  Clark v. Darby, 300
A.D.2d 732 (App. Div. 3d Dept. 2002).  Further, per the Restatement of Restitution § 110
(1937), "a person who has conferred a benefit upon another as the performance of a contract
with a third person is not entitled to restitution from the other merely because of the failure

---

have actual knowledge of the Agreement, see footnote 2, the court concludes that that Greenwich's lack of
knowledge of the Agreement does not raise a material issue of fact.

of performance by the third person." However, this proposition is not absolute. Instead, the court will inquire whether a party "acted in such a way as to incur obligations to the [party claiming unjust enrichment] outside the contractual structure." U.S. E. Telecomm's, Inc. v. U.S. W. Communications Serv.'s, 38 F.3d 1289, 1297 (2d Cir. 1994).

Greenwich cannot prevail under the theory of unjust enrichment because it has failed to show that GSCP was enriched. Greenwich's only assertion is that as majority shareholder of Atlantic Express, GSCP *must* have benefited from Atlantic Express' use of the Bonds that Greenwich posted for Atlantic Express' benefit but Greenwich adds no specificity to that general allegation. Any benefit conferred on GSCP could only have been the indirect result of being the majority shareholder. However this relationship alone cannot is an insufficient basis for Greenwich's unjust enrichment claim against GSCP.

In looking to the actions of the parties, the actions and express statements of GSCP made clear to Greenwich that GSCP would not guarantee Atlantic Express' obligations. Greenwich was free to seek its own legal counsel with respect to the circumstances in which it would be able to step into the shoes of Atlantic Express and enforce the obligation of GSCP to Atlantic Express. The court finds that GSCP did not "act[] in such a way as to incur obligations to [Greenwich] outside the contractual structure." U.S. E. Telecomm's, Inc., 38 F.3d at 1297.

### Detrimental Reliance

In New York, "a claim for detrimental reliance is analyzed as a claim of promissory estoppel where the claim has its basis in an unenforceable oral agreement." Thayer v. Dial Indus. Sales, Inc., 85 F.Supp.2d 263, 271 (S.D.N.Y. 2000). To a assert a claim for promissory estoppel, three elements must be met: " 'a clear and unambiguous promise; a

reasonable and foreseeable reliance by the party to whom the promise is made; and an injury

sustained by the party asserting the estoppel by reason of his reliance'." Arcadian

Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir. 1989) (quoting Esquire Radio &

Elecs., Inc. v. Montgomery Ward & Co., 804 F.2d 787, 793 (2d Cir. 1986) (quoting

Restatement (Second) of Contracts § 90 (1981))).

Greenwich is arguing that GSCP orally promised, during telephone conversations,

that it would be financing the Bonds for Atlantic Express and thus Greenwich need not worry

about getting paid.  However, even if these telephone conversations influenced Greenwich's

decision to enter into its contract with Atlantic Express, the written agreements embodied in

the July 19th and July 20th Letters supersede any oral agreements that may have been made.

Thayer, 85 F.Supp.2d at 268 ("A subsequent contract concerning the same subject matter

supersedes the prior contract.").  Further, during those telephone conversations, GSCP stated

that it would not guarantee the bond payments for Atlantic Express.  GSCP's refusal to be a

guarantee for Atlantic Express is a 'clear and unambiguous' statement that *no* promise was

made.  Greenwich cannot recover under this theory.

## Conclusion

For the foregoing reasons, the motion for summary judgment of GSCP is granted.

The cross-motion of Greenwich is denied.

Settle appropriate order.

Date:   New York, New York
        March 6, 2008

                                        /s/ Prudence Carter Beatty
                                        U.S. Bankruptcy Judge