**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>METRO AFFILIATES, INC., et. al.<br><br><br>                                      Debtors. | 08 Civ. 03814 (LAP)<br><br>Chapter 11 Cases<br><br>Case No.: 02-42560 (PCB)<br>(Jointly Administered) |
| GREENWICH INSURANCE COMPANY,<br><br>                                      Appellant,<br><br>vs.<br><br>GREENWICH STREET CAPITAL<br>PARTNERS II, L.P.,<br><br>                                      Appellee. | |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**REPLY BRIEF OF APPELLANT GREENWICH INSURANCE COMPANY**

---

   WOLFF & SAMSON, PC
   140 Broadway
   Forty-Sixth Floor
   New York, New York 10005
   212-973-0572

   *Attorneys for Appellant Greenwich Insurance Company*

Counsel:   Karen L. Gilman (KG-5161)
           Kenneth N. Laptook (KL-8357)

1139261.1

# TABLE OF CONTENTS

Introduction ..................................................................................................................................1

Detrimental Reliance/Promissory Estopppel ...........................................................................2

The GSCP Commitment Letter Is Not An Executory Contract..........................................5

Equitable Estoppel .......................................................................................................................9

Conclusion ..................................................................................................................................11

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Fr. Winkler KG v. Stoller*, 839 F.2d 1008 (3d Cir. 1988).................................................................5

*Mellon Bank v. M.K. Siegel*, 96 B.R. 505 (D. Ct. E. D. Pa. 1989) ..................................................5

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295 (2d Cir. 1996) ..............................................8,

*Stanish v. Polish Roman Catholic Union of America*, 484 F.2d 713 (7th Cir. 1973)......................4

*United States v. Kurtz*, 525 F. Supp. 734 (E.D. Pa. 1981), aff'd, 688 F.2d 827 (3d Cir.),
cert. denied, 459 U.S. 991 (1982) ....................................................................................................5

### STATE CASES

*Geneva Pharms. Tech. Corp. v. Barr Laboratoriess, Inc.*, 2003 WL. 1345136 (S.D.N.Y.
March 19, 2003).................................................................................................................................4

### STATUTES

11 U.S.C. §365 ..................................................................................................................................5

11 U.S.C. §524(e) .............................................................................................................................5

### MISCELLANEOUS

Restatement 2d of Contracts, §90(1)(1979)......................................................................................4

**Introduction**

In its opposition brief on this appeal, GSCP attempts to provide support for the Bankruptcy Court's decision granting it's motion for summary judgment and denying Greenwich's cross-motion. In doing so, however, GSCP disregards or discounts critical facts and invites the Court to do the same.

From the outset, GSCP seeks to limit the universe of relevant facts to those set forth in the parties' Joint Statement of Material Facts, repeatedly criticizing Greenwich for relying upon facts not contained in the Joint Statement but set forth, instead, in Greenwich's own Statement of Material Facts. Thus, GSCP misconceives the issue before the Court when it states:

> GSCP based its motion for summary judgment solely on the material facts not in dispute as set forth in the Joint Statement, and the Bankruptcy Court rendered its decision granting GSCP's motion based entirely on those very same stipulated facts. Accordingly, the only issue with respect to GSCP's motion is whether the Court properly applied the law to the undisputed material facts relied upon by GSCP. (GSCP Br., p. 15)

On the contrary, the facts to be considered by this Court in its de novo review are not limited to those in the Joint Statement but include, as well, those set forth in the parties' respective separate Statements of Material Facts (Document No. 11 in the Record). Such additional facts may be disputed, but may nevertheless be relevant to a proper determination of this matter: i.e., whether the Bankruptcy Court erred in granting GSCP's motion for summary judgment and/or in denying Greenwich's cross-motion for summary judgment. Indeed, the Joint Statement itself plainly sets forth the parties' understanding to that effect: "The parties reserve the right to rely upon their individual Statements of Material Facts, previously submitted pursuant to Local Rule 7056-1." (Joint Statement, pp. 1-2, Document No. 14 in the Record).

1

**Detrimental Reliance/Promissory Estopppel**

Greenwich submits that the Bankruptcy Court erred in rejecting its promissory estoppel/detrimental reliance claim and in granting GSCP's motion for summary judgment and denying Greenwich's cross-motion for similar relief.

The necessity for the Court to consider facts outside the parties' Joint Statement is apparent with respect to Greenwich's promissory estoppel/detrimental reliance claim. Among the critical facts relevant to that claim are those surrounding and resulting from the June 2001 telephone conversation between Kieran Moran (of Greenwich) and Bradley Kane (of GSCP).

Atlantic Express had asked Greenwich to issue additional bonds to secure its financial obligations under the Premium Finance Agreement with Cananwill. (Moran Tr. 11:23-12:9; Wiss Tr. 19:11-20) Greenwich, concerned about Atlantic Express's financial condition, had refused to do so without additional security in the form of collateral or a third-party indemnity. (Moran Tr. 14:22-15:10; Wiss Tr. 20:21-21:19) Atlantic Express told Greenwich that it was unable to provide collateral but that it would discuss the matter of additional security with its owners. (Moran Tr. 15:14-19)

As a result, in late June of 2001, Kieran Moran, Bradley Kane and others participated in a telephone conference call, the purpose of which was to give Greenwich some comfort regarding GSCP as an additional source of security. (Moran Tr. 15:20-16:10) Kane gave Moran an overview of GSCP and explained that it simply could not sign an indemnity agreement because it would then have to disclose that obligation to its investors. Kane told Moran that GSCP would protect Greenwich in the transaction and would guarantee the Atlantic Express obligation but that, in order to circumvent the disclosure problem, they had to do it in a way that the writing did

2

not show an obligation running directly from GSCP to Greenwich. (Moran Tr. 17:8-19:17; See Greenwich Insurance Company's Statement of Material Facts, ¶21)[1]

It is true, as GSCP asserts, that Greenwich was told that GSCP would not guarantee Atlantic Express's obligations, that it would not indemnify Greenwich and that it would not make Greenwich a third-party beneficiary of any agreement embodying a financial commitment it undertook with respect to Atlantic Express (Joint Statement, ¶¶18-19). It is also true, however, that Kane explained to Greenwich that, although GSCP could not execute a written agreement showing an obligation running directly from it to Greenwich, it nevertheless would protect Greenwich with respect to any bonds it issued and would guarantee Atlantic Express's payment obligations in connection with those bonds.

As a result, and specifically in order to induce Greenwich to issue the Bonds, GSCP executed the July 19, 2001 GSCP Commitment Letter, in which it promised to provide Atlantic Express with the funds needed to meet its payment obligations to Cananwill in connection with the Premium Finance Agreement and to Greenwich in connection with the Bonds to be issued to Cananwill. (Laptook Aff., Ex. B) (See Greenwich Insurance Company's Statement of Material Facts, ¶22)[2] There simply can be no doubt that (1) the purpose of the GSCP Commitment Letter was to induce Greenwich to issue the Bonds; and (2) GSCP intended and understood that Greenwich would and did, in fact, rely on the GSCP Commitment Letter when it later issued

---

[1] GSCP "disputed" this paragraph in Greenwich's Statement of Material Facts, but did so without providing any evidence that the conversation, as described by Moran, did not occur. (See, GSCP's Objections and Responses to Greenwich Insurance Company's Statement of Material Facts, ¶21)

[2] GSCP "disputed" this paragraph in Greenwich's Statement of Material Facts, as well. (See, GSCP's Objections and Responses to Greenwich Insurance Company's Statement of Material Facts, ¶22). In particular, GSCP challenges Greenwich's assertion that the purpose of the GSCP Commitment Letter was to "induce" Greenwich to issue the bonds. (Id.) However, that was clearly the intent of the parties who negotiated and who executed the document.

those Bonds. To deny those contentions is to deny logic, common sense and the evidence before the Court.

Thus, the GSCP Commitment Letter (and the Atlantic Express Commitment Letter) did not "supercede" the clear and unambiguous promise made by Kane (on behalf of GSCP) to Greenwich. They were, instead, the agreed-upon means of <u>effectuating</u> the promise to Greenwich which was set forth in the letter from GSCP to Atlantic Express – that GSCP would ultimately be liable on the debt -- and it was entirely reasonable for Greenwich to rely on those letters, and on GSCP's promise which they embodied, in issuing the Bonds. As a result of that reliance, and of GSCP's subsequent refusal to provide the promised funds to Atlantic Express for payment to Greenwich, GSCP has reaped a windfall entirely at the expense of Greenwich, and Greenwich has suffered damages in excess of one million dollars.

Thus, the only way that injustice can be avoided in this case is by acknowledging Greenwich's reliance and enforcing GSCP's promise, even if that promise is, for some reason, deemed otherwise unenforceable. <u>Geneva Pharms. Tech. Corp. v. Barr Labs, Inc.</u>, 2003 WL 1345136 (S.D.N.Y. March 19, 2003); <u>see</u> Restatement 2d of Contracts, §90(1)(1979) (promise reasonably expected to induce action by third party, not the promisee, is binding if it does induce such action and if enforcement is required to avoid injustice); <u>see</u> <u>also</u> <u>Stanish v. Polish Roman Catholic Union of America</u>, 484 F.2d 713, 722 (7th Cir. 1973).

4

**The GSCP Commitment Letter Is Not An Executory Contract**

Greenwich submits that the Bankruptcy Court erred in concluding that the GSCP Commitment Letter and the Atlantic Express Commitment Letter constituted an executory contract the enforcement of which was barred by Bankruptcy Code §365(c)(2) and in granting GSCP's motion for summary judgment and denying Greenwich's cross-motion for similar relief.

The Bankruptcy Court did, in fact, turn the law on its head by approaching this issue with the conviction that any pre-petition agreement for a loan or financial accommodation that is unperformed on the petition date is per se executory. (Opinion, p. 12)  As we have suggested, the very language of the statute contradicts that assumption.  A guaranty, for example, is a financial accommodation that is enforceable regardless of the limitations contained in 11 USC §365.  It is black-letter law that the obligations of a debtor's guarantor are not discharged or affected in any way by operation of the Bankruptcy Code.  See 11 USC §524(e); Fr. Winkler KG v. Stoller, 839 F.2d 1002, 1008 (3d Cir. 1988) (citing United States v. Kurtz, 525 F. Supp. 734, 742 (E.D. Pa. 1981), aff'd, 688 F.2d 827 (3d Cir.), cert. denied, 459 U.S. 991, (1982)).  "While the Bankruptcy Code expressly alters the contractual obligations of the bankrupt, it does not contemplate the same effect on the obligations and liabilities of third parties to a creditor."  Mellon Bank v. M.K. Siegel, 96 B.R. 505, 506 (E. D. Pa. 1989).

The Bankruptcy Court concluded that the GSCP Commitment Letter and the Atlantic Express Commitment Letter were, in any event, executory in part because of the "implicit obligation [in those letters] to repay the monies advanced, an obligation made explicit in the [Funding] Agreement." (Opinion p. 13, n. 6)  Yet, there is nothing in either letter that remotely suggests an obligation on the part of Atlantic Express to "repay" GSCP.  There is simply no basis for the Bankruptcy Court to imply such a "repayment" term in the documents.

5

The Bankruptcy Court's suggestion that the implied repayment obligation was made explicit in the Funding Agreement only raises additional problems. Although disputed by GSCP, the evidence is essentially uncontradicted that Greenwich was unaware of, and did not in fact receive a copy of, the Funding Agreement until years later, during discovery in this case. The Bankruptcy Court thought it unnecessary to decide that issue, finding it not to be material. (Id.) Nevertheless, the undisclosed Funding Agreement evidences GSCP's bad faith and duplicitous conduct in connection with this transaction. At the very moment that Greenwich issued some $10 million in bonds, relying on the GSCP Commitment Letter, that letter was no longer in effect. It had been "superceded" by a very different agreement, reflecting a far more circumscribed commitment on the part of GSCP, which, among other things, provided that GSCP's obligation to provide funds to Atlantic Express would extend for only one year and, in addition, would terminate in the event of a bankruptcy. (Laptook Aff. Ex. D, ¶¶1 and 3). Neither GSCP nor Atlantic Express saw fit to inform Greenwich of that fact.[3] Thus, GSCP and Atlantic Express had, unilaterally and in secret, substantially eroded the alternate source of repayment that they had promised to Greenwich and upon which it had relied in issuing the Bonds.[4]

Perhaps realizing the infirmity of its position – clearly Greenwich would never have issued the Bonds if it had known that GSCP's commitment was now so conditional and that it terminated in the event Atlantic Express went into bankruptcy and really couldn't pay – GSCP claims not to be relying on the Funding Agreement, but on the ostensibly superceded GSCP and

---

[3] Although Ron Jewell, GSCP's attorney, had begun drafting the Funding Agreement sometime in June 2001, he did not disclose its terms or its existence to Ron Wiss during their negotiations and Greenwich only learned of it during the course of this dispute. (Laptook Aff., Ex. T (Jewell Tr. at 24:7-17, 25:6-8, 73:10-74:2, 74:16-24, 75:20-25, 78:7-14, 80:23-81:21)); (Laptook Aff., Ex. S (Wiss Tr. 59:22-25, 63:24-64:8, 64:14-65:5)).

[4] Perhaps equally astonishing, they had done so only one day after execution of the GSCP Commitment Letter and on very day of execution of the Atlantic Express Commitment Letter.

6

1139261.1

Atlantic Express Commitment Letters.  GSCP has now, for the first time, raised a new contention as to the executory nature of those letters: that, since GSCP has never provided Atlantic Express with funds to pay Greenwich, Atlantic Express has a still-unperformed obligation to deliver such funds (upon their receipt) to Greenwich and that, therefore, the agreement is executory.

Greenwich contends that those letters, whether read together or separately, are not executory and that all of the parties, except GSCP, fully performed all of their material obligations before the Atlantic Express petition was filed.

Moreover, while Greenwich agrees that the GSCP Commitment Letter is a financial accommodation, the evidence discussed above regarding the creation of that document makes it clear that the intent of the parties was to create something functionally equivalent to, or as close as possible to, a guaranty.

7

1139261.1

**Equitable Estoppel**

GSCP contends that Greenwich should not now be permitted to assert a claim of equitable estoppel for the first time on appeal. But GSCP has misconstrued both the facts and the law relating to the assertion of that claim.

Contrary to GSCP's contention, and as the previous discussion of the Funding Agreement makes clear, GSCP and Atlantic Express did, in fact, defraud Greenwich when they entered into the Funding Agreement secretly and without notice to Greenwich, thereby replacing the unconditional obligations contained in the GSCP and Atlantic Express Commitment Letters, upon which Greenwich relied, with far more restricted, conditional and short-term obligations.

GSCP also contends, incorrectly, that Greenwich does not meet the criteria for invoking a claim of equitable estoppel for the first time on appeal because there would be a need for additional fact-finding to determine whether Greenwich can substantiate its claim. But the test, set forth in Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 302 (2d Cir. 1996), is disjunctive: an appellate court can disregard the general rule and allow such a claim to be asserted for the first time on appeal where (1) consideration of the issue is necessary to avoid manifest injustice, or (2) the issue is purely legal and there is no need for additional fact-finding. Clearly, Greenwich satisfies the first of those two criteria and, therefore, the Court can consider its equitable estoppel claim.

8

**Conclusion**

For all of the foregoing reasons, as well as those set forth in its main brief on appeal, plaintiff-appellant Greenwich Insurance Company respectfully submits that the decision of the court below granting defendant GSCP's motion for summary judgment and denying Greenwich's cross-motion for summary judgment should be reversed.

        WOLFF & SAMSON PC

        /s/ Karen L. Gilman
        Karen L. Gilman, Esq. (KG-5161)
        140 Broadway
        Forty-Sixth Floor
        New York, New York 10005
        Tel: (212) 973-0572
        Fax: (973) 530-2207
        Attorneys for Plaintiff
        Greenwich Insurance Company

Dated: July 15, 2008